**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRYAN ESTRADA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 16 C 10379 |
| | ) | |
| JACQUELINE LASHBROOK, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Bryan Estrada has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 alleging a variety of errors in connection with his trial for murder, including ineffective assistance of counsel and sufficiency of the evidence. None of his arguments are meritorious given the high bar for federal habeas relief, so the petition is denied.

## I. BACKGROUND[1]

### A. Factual Background

Petitioner Bryan Estrada was convicted in 2009 by an Illinois jury of first degree murder, attempted murder, and personally discharging a firearm during both offenses. *People v. Estrada*, 2012 IL App (1st) 100265-U, ¶ 2 (Ill. App. Ct. 2012). He was sentenced to a total of 80 years in prison. *Id*. The convictions stemmed from a March 25, 2007 incident in which Luis Villegas was

---

[1] This background statement is based on the facts set forth in the Illinois appellate court's opinion affirming Estrada's conviction. *People v. Estrada*, 2012 IL App (1st) 100265-U (Ill. App. Ct. 2012). These findings are presumed correct on federal habeas review absent a petitioner's presentation of clear and convincing evidence to rebut them. *See* 28 U.S.C. § 2254(e)(1). "The presumption of correctness also applies to factual findings made by a state court of review based on the trial record." *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Morgan v. Hardy*, 662 F.3d 790, 797–98 (7th Cir. 2011). Estrada has made no such presentation here.

shot and killed. *Id* at ¶¶ 2, 4. A second victim, Edgar Martinez, was in a car with Villegas when the shooting occurred but was not hit by the gunfire. *Id*.

Estrada was tried with codefendant Rufino Castillo (although each had a separate jury). *Estrada*, 2012 IL App (1st) 100265-U, ¶¶ 2, 4. Rufino's brother, James Castillo, was originally charged in the murder, but those charges were dropped in favor of lesser charges. *Id*. at ¶ 4. James testified against Estrada in exchange for the reduced charges. *Id*. at ¶ 18. Specifically, James testified that Estrada had been his neighbor in the late 1990s and early 2000. *Estrada*, 2012 IL App (1st) 100265-U, ¶ 19. Estrada called James on the day of the murder and asked if he wanted to "go cruising." *Id*. Estrada, accompanied by an individual James knew only as "Carlos," met up with James and Rufino at a nearby carwash. *Id*. After driving in their separate cars to the neighborhood where the murder would later take place, Estrada and Carlos parked their cars and got into Rufino's Ford Contour. *Id*. At some point, Rufino said he was tired and James began driving. *Id*. At the time of the shooting, Estrada was seated behind James on the driver's side while Carlos was seated on the passenger's side behind Rufino. *Id*.

James testified that after driving for 30 to 45 minutes, he drove down an alley between Lawndale and Monticello in Chicago. *Estrada*, 2012 IL App (1st) 100265-U, ¶ 20. Right before he got to the intersection, a dark SUV blocked them. *Id*. James testified he saw the SUV door crack open slightly and then heard gunshots coming from behind him. *Id*. He went down for cover and heard the door behind him close, which led him to know Estrada was the shooter. *Id*. Estrada then started shouting at James to get out of there, which both vehicles did. *Id*. Estrada told James repeatedly to drop him off, which James did shortly thereafter. *Id*. During James' testimony, Estrada's counsel was permitted to question James about whether his brother Rufino

had been charged in the shooting, but was not allowed to ask whether or not James would be testifying against Rufino. *Id.* at ¶ 21.

Victim Edgar Martinez testified that on the day of the shooting, he and Villegas had been driving a Chevy Tahoe when they saw a red car with Rufino and James in the front seat. *Estrada*, 2012 IL App (1st) 100265-U, ¶ 5. Martinez had known them for years from living in the same neighborhood. *Id.* He testified that he and Villegas were members of the Spanish Gangster Disciples gang while Rufino and James were members of the rival Imperial Gangsters. *Id.* at ¶ 6. Martinez and Villegas went to find and "mess with" the Castillo brothers, stopping at an alley intersection where they saw the red car. *Id.* They began "throwing gang signs" and the people in the red car responded in kind. *Id.* Martinez testified that a passenger then got out of the back seat on the driver's side and began shooting at Martinez and Villegas. *Id.* Martinez further testified that when the shooting started, he drove off before stopping a few blocks away to make sure Villegas was okay. *Id.* ¶ 7. Villegas had been hit in the head by a bullet, so Martinez called 911. *Id.* When police arrived, Martinez went with them to the police station and identified James and Rufino in a photo array. *Id.* The next day, Martinez identified Estrada from a second photo array as the shooter. *Id.* He identified Rufino in a lineup the same day and Estrada in another lineup a few days later. *Id.* Martinez also identified Estrada as the shooter at trial. *Id.* ¶ 6.

Other witnesses confirmed that Rufino had been driving a red Ford Contour on the day in question, and that a red car with four young men in it had passed near the alley in question twice just before the shooting. *Id.* ¶¶ 9-10. Police officers gave further supporting evidence, including testimony that Villegas and Martinez had been in a black SUV, that Martinez originally described the shooter as a Hispanic male, and that there were no weapons inside the SUV. *Id.* ¶ 12-13. A spent shell casing was recovered from the outside windshield area of the Ford

Contour, which matched shell casings found in the alley and were fired from the same weapon. *Id.* ¶ 14.

Two investigating police officers confirmed that Martinez had identified James, Rufino, and Estrada in photo arrays and lineups. *Id.* ¶ 15-17. They stated that Carlos Vasquez was in the lineup with Martinez, but Vasquez was not identified. *Id.* ¶ 17. Officer Suvada testified he understood that Vasquez was the fourth person in the car, but he was never charged in the shooting. *Id.*

The evidence linking Estrada to the murder was not without some warts, however. One of the photos used in the array from which Martinez identified Estrada was marked "IG Chino" on the back. *Id.* ¶ 15. Both the officers and Martinez stated that the photo, which was not of Estrada, was not the photo selected by Martinez and that they did not know who had marked the photo. *Id.* Martinez apparently knew Estrada through his younger brothers, but did not identify him by name in the first encounter he had with police (as he did with James and Rufino). *Id.* ¶¶ 8-9. There was conflicting evidence as to what haircut Martinez initially told police the shooter had. *Id.* ¶¶ 8-9, 15, 24-27. James and Martinez's accounts also differed on certain details, such as whether the windows of the SUV were up or down and whether they had flashed gang signs prior to the shooting. *Id.* ¶ 33.

### B. Procedural Background

Estrada appealed his conviction, arguing that: the evidence was insufficient to support the verdict; the trial court had failed to ask the venire whether they accepted the principles of Illinois Supreme Court Rule 431(b); and the trial court had erred in not allowing James to be questioned about whether he would testify against his brother. *Id.* ¶ 1. The appellate court rejected all of these contentions. It found the evidence was sufficient and that the flaws in the evidence were

presented to the jury. *Id.* ¶ 34. It found that although failure to explicitly ask all of the questions in Rule 431(b) was erroneous, trial counsel had failed to preserve the issue and the case was not so closely balanced that the error merited reversing the jury's verdict. *Id.* at ¶ 43. Finally, the appellate court concluded that the trial court was within its discretion to prohibit questions about whether James would testify against his brother because "the jury was well aware of James' bias, interest, or motive to testify falsely." *Id.* ¶ 46.

Estrada then filed a petition for leave to appeal with the Illinois Supreme Court, raising only his Rule 431(b) and sufficiency of the evidence claims. *See* Pet. for Leave to Appeal, Ex. F at 3-4, ECF No. 11-1. The petition for leave to appeal was summarily denied on September 26, 2012. *See id.* at 21. Through counsel, Estrada then filed a state petition for post-conviction relief, arguing only that his right to effective assistance of counsel had been violated for failing to investigate and call Carlos Vasquez as a witness. *See* Pet. for Post-Conviction Relief at 3, Ex. G, ECF No. 11-2.

Estrada supported his state petition with affidavits, which stated that his trial counsel told him a few days before trial that he had spoken to Vasquez, who was willing to testify, and that Vasquez told Estrada he was outside the courtroom during the trial because he was willing to testify. *People v. Estrada*, 2016 IL App (1st) 141806-U, ¶ 12 (Ill. App. Ct. 2016). Vasquez had been arrested the same day as Estrada and invoked his right to counsel so he was not interviewed. *Id.* Estrada told police after he was arrested that he had been with Vasquez driving around the south side "all afternoon" on the day of the shooting. *Id.*

Vasquez averred that on the day of the shooting, Estrada invited him to meet up at a carwash at Lawrence and Cicero to go meet "a couple of girls" on the south side of Chicago. *Id.* at ¶ 13. When Vasquez arrived at the carwash, Estrada told him Rufino and James had called him

and wanted to hang out with them. *Id*. Vasquez noted all four of them were in the same gang together. *Id*. Rufino and James showed up at the carwash in a red Ford "highly intoxicated" even though it was only 1 p.m. *Estrada*, 2016 IL App (1st) 141806-U at ¶ 13. Estrada declined to go with Rufino and James, who left the carwash. *Id*.

Vasquez averred that he parked next to the carwash and left with Estrada (in Estrada's car) to visit Estrada's sister for about 45 minutes. *Id*. They then went to another location on the south side but were unable to meet the girls. *Id*. They then stopped at a restaurant on the south side, purchased food, and ate it outside Estrada's sister's house. *Id*. Vasquez then stated that he and Estrada went back to pick up his car from the carwash around 4:30 or 5:00 in the evening. *Id*. Upon arriving at the intersection at Lyndale and Drake, Vasquez averred that they saw Rufino and James fighting one another and "still drunk." *Estrada*, 2016 IL App (1st) 141806-U at ¶ 13. Vasquez noted he and Estrada went to school with Rufino and James and were used to them fighting since James was a bully who had also beaten up Estrada in the past. *Id*.

Estrada's trial counsel interviewed Vasquez but chose not to call him despite this potential alibi. *Id*. at ¶ 15. The appellate court found that although the testimony presented a potential alibi, trial counsel was not constitutionally deficient for failing to call Vasquez as a witness. *Id*. at ¶ 23. Noting that trial strategy is entitled to a strong presumption of adequacy, the appellate court found that the "potential of impeachment" was sufficiently strong for trial counsel to opt instead to focus on deficiencies in the state's evidence and the credibility of its witnesses. *Id*.

The trial court denied the petition for post-conviction relief on May 29, 2014. *See* Ex. G at 138-39. Estrada appealed, asserting only the same ground. *People v. Estrada*, 2016 IL App (1st) 141806-U. The appellate court affirmed the denial of post-conviction relief on March 23,

2016. *Id.* He filed a petition for leave to appeal in the Illinois Supreme Court, which was summarily denied on September 28, 2016. *People v. Estrada,* 60 N.E. 3d 876 (Ill. 2016).

Estrada timely filed this *pro se* habeas petition on November 4, 2016. He claims the writ should be granted because the evidence was insufficient to convict him, the trial court failed to comply with Illinois Supreme Court Rule 431(b), the trial court unconstitutionally limited the cross-examination of James Castillo, and that trial counsel was constitutionally ineffective for failing to investigate and call Carlos Vasquez as an alibi witness. For the reasons explained below, the Court denies Estrada's petition.

## II. ANALYSIS

As a threshold matter, before he may bring claims in a federal habeas proceeding, a petitioner must have exhausted the state court remedies available to him. 28 U.S.C. § 2254(b)(1). To then prevail on a habeas claim, a petitioner must show that he is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The writ can only be granted if the state court decision below "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or. . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. at § 2254(d). This is a high standard: the state court's application must have been "unreasonable," not merely incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

### A. Rule 431(b) Claim

"[F]ederal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). The state court found on direct review that as a matter of Illinois law,

the trial court's failure to follow Illinois Supreme Court Rule 431(b)[2] was erroneous but not sufficiently prejudicial as to overcome trial counsel's failure to object. *People v. Estrada*, 2012 IL App (1st) 100265-U, ¶ 43 (Ill. App. Ct. 2012). The state court's interpretation of a state court rule does not present a violation of federal rights that can be addressed by this Court. *See, e.g., United States ex rel. Murithi v. Butler*, No. 14-CV-3090, 2015 WL 1399511, at *12 (N.D. Ill. Mar. 23, 2015) (denying claim based on violation of Rule 431(b)); *Rosario v. Akpore*, 967 F.Supp.2d 1238, 1250 (N.D.Ill.2013) (same). Thus, this Court denies the claim premised on the trial court's failure to follow Illinois Supreme Court Rule 431(b).

## B. Confrontation Clause Claim

Before a petitioner can bring a claim on federal habeas review, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In order to have properly preserved his claims for appeal, Estrada must have presented him claims to both the Illinois Appellate Court and the Illinois Supreme Court (through a petition for leave to appeal). *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Estrada raised his Confrontation Clause claim in the state appellate court on direct review but not in his petition for leave to appeal. Thus, this claim has been procedurally defaulted.[3] A

---

[2] The rule requires that potential jurors be asked whether they understand and accept the presumption of innocence, the reasonable doubt standard, that the defendant's failure to testify cannot be held against him, and that the defendant is not required to offer any evidence. Ill. Sup. Ct. R. 431(b). Here, the trial court asked the prospective jurors whether they understood the principles, but not whether they "accepted" them. *Estrada*, 2012 IL App (1st) 100265-U, ¶ 38.

[3] In his reply, Estrada requests that this Court stay his petition while he files a second state habeas petition for any defaulted claims. *See* Reply at 4. In Illinois, however, only one habeas petition may be filed unless a prisoner can show cause and prejudice for his failure to bring a claim in his initial habeas petition. 725 ILCS 5/122-1(f). Estrada has not offered any premise for cause to excuse his failure to exhaust claims other than his ineffective assistance

procedural default is excused only if "a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Id.*

No cause has been presented or argued for Estrada's failure to raise the Confrontation Clause issue with James's cross-examination in his Illinois Supreme Court petition for leave to appeal. Instead, Estrada argues this violation resulted in a fundamental miscarriage of justice. In order to demonstrate such a miscarriage, a petitioner "must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent such that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016) (internal quotation marks omitted). Here, Estrada has offered no new evidence and in any event the state appellate court rightly concluded that the jury was well aware of the vulnerabilities afflicting James' testimony and credibility. *Id.* ¶ 45. Although they were not aware that James would not be testifying against his brother, they did know that James was Rufino's brother and that charges in the murder had been dropped against him to gain his testimony. The additional fact that James was testifying only against Estrada would not have made it more likely than not that no reasonable juror would have convicted Estrada, especially in light of the fact that Estrada had been identified as the shooter by Martinez as well. Thus, the Court concludes Estrada has failed to overcome the procedural default of his Confrontation Clause claim.[4]

---

claim, and so the Court has no reason to believe he would be able to do establish cause in a successive state habeas petition. Therefore, the Court declines to stay the case to allow Estrada to pursue a second state habeas petition.

[4] Respondent also correctly notes that there is an adequate and independent state law ground for dismissing the Confrontation Clause claim. Estrada's counsel failed to object contemporaneously or raise the alleged error in post-trial briefing, so the claim was subject to the

**C. Sufficiency of the Evidence**

Estrada contends that the evidence was insufficient to convict him at trial because the testimony linking him to the shooting was "conflicting, impeaching, and wholly unbelievable." *See* Pet. at 5. Estrada raised this issue in both his direct appeal and his petition to the Illinois Supreme Court. The state appellate court rejected his argument, finding that although the testimony contained some conflicts (such as whether the gang signs were thrown and how Martinez initially described the shooter) and biases (such as the familial relationship between James and Rufino), those conflicts presented credibility issues for the jury to determine. *Estrada*, 2012 IL App (1st) 100265-U at ¶ 34. Furthermore, the court noted, the witnesses agreed on the central issue – that Estrada was the shooter. *Id.*

To prevail on a sufficiency of the evidence claim in a federal habeas proceeding, Estrada must make a difficult showing. Evidence is sufficient for a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). That already high bar is raised on habeas review, where the petition must also demonstrate that the state court's decision finding the evidence sufficient was itself "objectively unreasonable." *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

Here, the state appellate court was correct that there was sufficient testimony to convict Estrada. Two eye witnesses from different gangs (Martinez and James) testified that Estrada was

---

plain error standard under state law. *Estrada*, 2012 IL App (1st) 100265-U at ¶ 44. The appellate court held that Estrada failed to establish plain error (or any error at all, for that matter) and therefore denied the claim on that independent state law basis. *Id.* ¶ 46 ("the trial court did not err and thus, there can be no plain error"). Default in state court is an adequate and independent ground for denying a federal claim in federal court. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

the shooter. Both had known Estrada for a significant period of time, lending credibility to their identification. Martinez also identified Estrada in a photo array and a lineup shortly after the shooting. *Estrada*, 2012 IL App (1st) 100265-U at ¶ 7. Other witnesses provided corroborating evidence regarding the red Ford car and its occupants. *See id.* at ¶10-11. Although the lead witnesses (Martinez and James) were not choir boys, they had sufficient opportunity to see Estrada during the shooting and sufficient familiarity to recognize him. *See McFowler v. Jaimet*, 349 F.3d 436, 456 (7th Cir. 2003) (single witness identification of dubious quality sufficient evidence in habeas review); *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("it is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar").

Essentially, Estrada argues that a reasonable jury could not have believed the eyewitnesses who testified at trial. Credibility determinations, however, are left to the jury.[5] *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009) (court cannot "reweigh the evidence, nor do we second-guess the jury's credibility determinations"). For the reasons outlined above, a reasonable jury could have found Estrada guilty beyond a reasonable doubt based on the eyewitness testimony presented in this case; that testimony was not patently incredible (far from it). Accordingly, the state court did not unreasonably apply the constitutional sufficiency standard set forth in *Jackson* and Estrada's sufficiency of the evidence claim must therefore be denied.

---

[5] The only exception to this rule is if testimony is "incredible as a matter of law," which occurs when it is "physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Van Wyhe*, 965 F.2d 528, 531 (7th Cir. 1992). Neither of those circumstances is presented here, so Martinez and James's testimony is not incredible as a matter of law.

**D. Ineffective Assistance of Counsel**

Estrada's final claim is that his trial counsel was constitutionally ineffective for failing to investigate and call Carlos Vasquez at trial. As discussed above, Vasquez would have presented an alibi suggested that he and Estrada were not with James and Rufino at the time of the shooting. Respondent argues initially that Vasquez's account "did not necessarily establish an alibi." Resp. at 10. Because Vasquez fails to provide detailed times and locations, Respondent argues there was plenty of time for Vasquez and Estrada to return to the location of the shooting. *Id*. The Court, however, agrees with the state habeas appellate court that Vasquez's story, at least on its face, presents a potential alibi because the gist of the proffered testimony is that Vasquez and Estrada were never in the red Ford with James and Rufino on the day of the shooting. *Estrada*, 2016 IL App (1st) 141806-U at ¶ 22.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668, 691 (1984). To prevail on a claim of ineffective assistance of counsel under *Strickland*, a petitioner must show "both that counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a result." *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). A lawyer has a duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

Estrada contends that his lawyer failed to investigate his alibi by interviewing Vasquez. As Estrada conceded in the state court, however, his lawyer did interview Vasquez. *See Estrada,* 2016 IL App (1st) 141806-U at ¶ 15. Estrada contends in his reply that a "mere phone call cannot be deemed an interview," *see* Reply at 5. Estrada's own affidavit, however, indicates that

Vasquez and the lawyer discussed his testimony and that Vasquez would be willing to testify at trial. *See* Estrada Aff., ECF No. 11-2 at 102. These conversations apparently progressed far enough that Vasquez went to court and waited outside Estrada's trial so he could be called. *Id.* And whether or not the interview was conducted by phone, the Court can find no support for the proposition that a witness interview cannot take place by phone, as long as counsel becomes aware of the facts that would form the witness's testimony. Thus, the Court agrees with the state habeas court that counsel did interview Vasquez. *Estrada*, 2016 IL App (1st) 141806-U at ¶ 15.

Judicial scrutiny of counsel's strategic decisions is "highly deferential" and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). All the testimony in this case indicates that Estrada's lawyer was aware of Vasquez and made a strategic choice not to call him. This may well have been sound strategy: Vasquez admitted he and Estrada were in the same gang, that he had originally been arrested in connection with the murder, and that he declined to give an account of his whereabouts at the time of the murder upon arrest. *See* Vasquez Aff., ECF No. 11-2 at 88-89; *Estrada*, 2016 IL App (1st) 141806-U at ¶ 13. Just as Estrada argues that James's testimony was unbelievable because he was a suspect and biased, Vasquez's testimony had similar problems. Instead, counsel chose to attack the credibility of the state's witnesses and evidence, pointing out numerous discrepancies in the evidence (such as the initial description of the shooter and the writing of "IG Chino" on another individual's photograph). *See Estrada*, 2016 IL App (1st) 141806-U, ¶ 23. Given these strategic concerns, the state appellate court did not unreasonably conclude that Estrada failed to demonstrate that his counsel performed at a constitutionally deficient level.

Furthermore, even if Estrada had established constitutionally deficient performance by his attorney, he would still need to demonstrate prejudice.[6] Prejudice requires that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Morales v. Johnson*, 659 F.3d 588, 600 (7th Cir. 2011). This requires a "substantial, not just conceivable" likelihood of a different result. *Id.* In *Morales*, the Seventh Circuit said that eyewitness testimony against a defendant is "substantial evidence," even from imperfect witnesses. *Id.* As in *Morales,* Estrada faced multiple eyewitness identifications that had consistently agreed that he was the shooter. In light of this substantial evidence against Estrada, the Court cannot say that Estrada has demonstrated a "substantial" likelihood of a different result at trial if Vasquez's testimony had been heard. Thus, the Court denies the ineffective assistance of counsel claim.

* * * * *

For the reasons stated above, Estrada's petition for a writ of habeas corpus is denied. Further, the court declines to issue a certificate of appealability ("COA"). A COA is warranted only if an applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). No such substantial showing has been made here. Every court to have addressed Estrada's constitutional claims has found them deficient. Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must (absent a basis for extension) file a notice of appeal in this Court within thirty days of the entry of judgment and must seek a certificate of appealability from the United States Court of Appeals for the Seventh Circuit. *See* Fed. R. App. P. 4(a)(1); 28 U.S.C. § 2253(c)(1).

---

[6] The state appellate court did not address prejudice due to its finding that Estrada's trial counsel's performance had not been deficient.

Dated: October 25, 2017

John J. Tharp, Jr.
United States District Judge